No. 83.—HENRY W. TINDALL, plaintiff in error, *vs.* JOHN T. HARKINSON and another, defendants in error.

[1.] A contract for the sale of land, will not be vitiated by a mere false assertion of the vendor, as to the quality and value thereof, where the buyer has full opportunity of forming a correct judgment, and is not prevented by the artifice of the seller from making the necessary examination; especially where the rescision is not applied for within a reasonable time after the injury is discovered.

In Equity, in Bibb Superior Court. Decision by Judge POWERS, November Term, 1855.

The bill in this case was filed by Henry W. Tindall, and alleged, that being desirous of purchasing some land, on which to employ a lot of negroes he held in trust for his children; he went to see a plantation in Taylor County, belonging to and cultivated by John T. Harkinson; that he informed Harkinson that he was utterly ignorant of the quality and value of lands, having no experience therein, and must rely on him for a truthful statement as to his lands; that Harkinson assured him he would do so; took complainant over a portion of the land, and assured him the remainder was equally good; stated that he made forty bales of cotton with eight hands that year (1853); that the land would yield from 8 to 1200 lbs. of cotton per acre, and from 15 to 25 bushels of corn; that land in that neighbohood sold, readily, for $10 per acre, the price he asked for his; that it was a lively and thrifty soil, and well remunerative of the labor he put upon it; that complainant, relying upon these statements, and placing implicit confidence in Harkinson, purchased the land at $10 per acre, took a deed thereto, and gave his three several notes for the purchase money; upon which notes, he has since paid about $900; that he took possession of the land, hired a competent overseer, and has faithfully tested it for two years; that he has discovered the statements of Harkinson to be utterly untrue; that the por-

tion of the land he did not show complainant, was the poorest and most inferior part of the tract; that he did not make the crop he said he did, but only one half of it; that land in that neighborhood never has sold for $10, but that $6 per acre is a full price therefor; that it will not yield the amount of cotton or corn which he stated, but that all of his representations were false, and made with the intention of deceiving and cheating complainant; that he has boasted that he sold his land for more than its value, and that he "stuck" complainant, who was a "greenhorn"; that in furtherance of his fraudulent design, he has colluded with one Hiram B. Troutman, to whom he has transferred these notes, after the two first were due, and who received the same with full knowledge of the fraud; that Troutman has sued complainant on them; that he has reason to fear that Harkinson is insolvent, and cannot respond to any judgment he could recover for this fraud. The prayer was for an injunction.

The answer of Harkinson admitted the sale, but utterly denied every allegation of fraud; denied making the representations charged, or that complainant relied upon his statements; averred that he showed him all the land, and that a full month expired while he was negotiating for the land; denied that the transfer of the notes was colorable, but insisted it was *bona fide;* denied that he was insolvent or likely to become so.

The answer of Troutman denied, utterly, all knowledge of any fraud, or any difficulty, or dissatisfaction on the part of complainant, or that he received the notes otherwise than *bona fide,* and for value; that one only was due when he traded for them; that complainant had previously made a payment on the notes through him to Harkinson, without suggesting any difficulty about them.

Upon the coming in of these answers, the Court dissolved the injunction. This decision is assigned as error.

LANIER & ANDERSON, for plaintiff in error.

TRACY, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The case made by the bill itself, is of doubtful sustainability. If men, under the circumstances set forth by the complainant himself, will not take the trouble to protect themselves, it is asking too much of the Courts to undertake this arduous duty.

Here is a purchaser who desires to make a considerable investment in real estate; he is on the premises, but did not examine the land; but alleges no satisfactory excuse why he did not. He is not prevented by sickness nor want of time, but chooses to rely upon the representations of the vendor rather than upon his own eyes. I will not say judgment, for he admits that he lacked that. And that being so, any one, of ordinary prudence would have consulted some disinterested person instead of confiding blindly in the owner. He is told that similar lands in the neighborhood are selling at ten dollars per acre; and yet, institutes no inquiry to ascertain whether the fact be so. He puts faith in the seller's statements, as to the productiveness of the soil and the size of the crops, when there were abundant sources at hand to appeal to on this head. He could have inquired of the children and negroes, the most, if not the only reliable witnesses in any region of country, both as to its health and fertility. But disregarding every means of ordinary precaution, Mr. Tindall makes the purchase blind-fold.

I never made but two trades in my life that I did not get cheated; and yet, I should have considered myself highly culpable, if I had not shown more diligence than Mr. Tindall, in guarding myself against imposition.

But if this be the case made by the bill itself, what equity is left in it by the answer? Nothing, we hold, upon which

Tindall *vs.* Harkinson and another.

to retain the injunction. Every material allegation upon which the equity of the bill depends, if, indeed, it has any equity, is met and flatly denied. To read the bill alone, we may conclude that the vendee got the worst of the bargain; but it is impossible to hear the answers and say he was defrauded. The undisputed facts in this case are against the defendant.

He bought the land in August, 1853, and took a deed to it. What season was more favorable to judge of the growing crop? He commenced making payments in February, 1854, shortly after the first note fell due, and continued to do so down to December, 1854, without uttering a word of complaint. He is sued to March Term, 1855, of the Inferior Court; and the offer to rescind the contract is not made until the filing of this bill, the August thereafter; and just about the time the notes would have gone into judgment, and exactly two years after he bought the property. It is said that figures cannot lie. As indicative of *dates* in this case, they speak significantly against the complainant. He renders no reason, either, for this unaccountable delay.

If the equity, as against Harkinson, is sworn off, there is an end of the case. But suppose it is not; the injunction could certainly only operate against the balance due upon the first note, that having been bought when past due. It must have been dissolved as to the rest. Indeed, it could only be retained as to a portion of the residue unpaid on the first note; for the complainant's reclamation amounts only to some $1900; and Harkinson still holds one of the $1600; so that, if there were equities between these parties, and Mr. Troutman could be affected by them, it could only be for the difference between the $1600 still held by Harkinson, and the $1900 claimed by Tindall. And to this extent, only, could the injunction be held up, under any circumstances.

But our judgment is, that the injunction should not be retained for any amount. Certain we are, that the Judge below was not guilty of flagrant injustice in dissolving the injunction.

Mr. Tindall told Mr. Harkinson that he had been merchandizing all his life, and knew nothing about land; and I will add, he was necessarily ignorant of planting. And this possibly may be the reason why the place has not yielded according to expectation. A man or woman who knows nothing of any business which they attempt to carry on, are not likely to succeed through the agency of subordinates. If the mistress knows nothing about cookery, the husband may make up his mind to eat bad victuals; if the merchant undertakes to farm through an overseer, he may look out for poor crops, however remunerative may be the soil. *Guano* will not save such an one from failure; and the more he gives the business his personal attention, as Mr. Tindall says he did, so much the worse. My *experience* and observation concur in satisfying me, that lawyers and merchants make excellent presidents of agricultural societies, but very indifferent practical planters. Physicians are more successful. I leave others to account for it.