## OLIVER *v.* OLIVER *et al.*

1. Courts can not, by requiring a disclosure of facts, deprive one party to a contract of the advantage which superior judgment, greater skill, or better information may give ; nor can they be expected to enter upon an inquiry as to how the parties would have contracted if each had known the same facts as to condition of the market, state of trade, or other extrinsic matters of general or special knowledge, where the sources of information were equally open to both.

2. But a sale may be rescinded where one conceals material facts as to the quality or value of the article sold, which the other party, by the exercise of ordinary prudence and caution, could not have discovered.

3. This rule is particularly applicable to those occupying a trust relation, when they seek to purchase property in any way committed to their care, management, or control.

4. While he does not hold title and is not a strict trustee, a director does occupy a fiduciary relation to the stockholders with reference to their shares.

5. Stock represents an interest in the property, and in the purchase of shares the debtor acquires, not merely the paper scrip, but the stockholder's interest in the property committed to the director's care.

6 Hence, by virtue of his control of the property, and his fiduciary relation to the shareholder, a director, when dealing with a stockholder for the purchase of shares, is under the same obligation as partners, agents, and other fiduciaries, to make a full disclosure of all material facts relative to the value of the property under his control, known to him and unknown to the stockholder, where the sources of information are not equally accessible to both parties.

7. Where a director purchases shares from a stockholder at 110, concealing the fact that there is a contemplated sale of the entire plant of the company, which makes the stock worth 185, the concealment of such material fact entitles the shareholder to rescind the sale, or to other appropriate relief.

Argued July 8, — Decided August 11, 1903.

Equitable petition. Before Judge Lumpkin. Fulton superior court. December 17, 1902.

The petition was against John Oliver and the Gate City Oil Company. These facts appear from it : John Oliver is a brother of the petitioners. He resides in Georgia, where the defendant company has its principal place of business, and they reside in New York. For a number of years all the brothers have been engaged together in various business enterprises in different parts of the country, and in all their enterprises their plan has been that each brother should be interested to the same extent as each of the others. John Oliver sold their stock in one of these enterprises, which was held by them as a firm under the name of Oliver Broth-

ers, and of which he had the management, and organized the defendant company, subscribing to its stock in the firm name but causing the stock to be issued in equal proportions to the members of the firm.    The petitioners left entirely to him the investment of the funds used for this purpose, and the management of the stock and of the company's affairs.    He was the president of the company.    While occupying that position he sought and obtained from the petitioners options on their holdings in the company, at $110 per share, alleging as a reason for so doing that there was no longer any profit in the business; that the increased number of small oil mills being built at cottonseed points rendered it more difficult for the larger companies to make dividends; that there might be an opportunity to sell out the plant at a fair price, and he wanted to be in a position where it could be sold if such an opportunity offered, the sale to be for the equal benefit of all the stockholders of the company.    In June, 1901, he mailed to them a statement of the affairs of the company, showing that it had been losing money that year.    In view of this statement and of the fact that no dividends were declared, and not knowing of the existence of certain assets omitted from the statement, and believing that the options were to be used for the purpose for which they were obtained, — "that is, of selling the plant for an amount not less than $110 per share, and, if more than that amount, that the price still would inure to the benefit of all parties concerned," they "allowed the options to continue."    The petition alleges that by these options "John Oliver was in reality constituted the agent of the petitioners for the purpose of delivering over their shares of the capital stock of the  . . company to such purchaser as might propose to purchase the plant upon terms which he might deem advantageous, netting the petitioners not less than $110 per share, and the petitioners sharing with the other stockholders upon equal terms in all amounts realized by such sale to be made by . . John Oliver as the agent of petitioners."    "John Oliver wrote the option and fixed therein the valuation himself, which . . petitioners did not question, for the reason that it was considered simply as a minimum sum at which the stock would be parted with, [he] to get the best he could above that for [them] and for himself."    The options were without consideration.    When they were given, or at the time of the last renewal of them, John Oliver had begun nego-

tiations which he concealed from the petitioners and which resulted in the sale, in August, 1901, of the plant and a part of the other assets of the company to the Virginia-Carolina Chemical Company, for a sum which, together with the remaining assets, made the stock worth very much more than $110 per share. According to the petition, the true value at that time was $185 per share, and was admitted by John Oliver to be $140 per share. In this sale he acted for the defendant company and as its president. When the trade was about to be consummated he borrowed money to pay the petitioners for their stock, had it transferred to himself on the books of the company, and bought other stock until he and Fred. Oliver, another brother, were the only stockholders on the books; and, on the consummation of the sale, he had the company to pay the stockholders of record $1.10 on the dollar of the stock, and used this money to repay the loan.

The petition alleges that when John Oliver took to himself the stock of the petitioners under the options, he violated the agency which had been created for him; that he committed a fraud on them by misleading them as to the purpose for which he wanted the options, and in giving them incorrect information of the affairs of the company (he then acting as president and giving the information to them as stockholders), which information showed the company to be worth less money than it was, and misled them in the sale of their stock; and further, by withholding from them, while occupying to them a relation of trust, information to which they were entitled and which made their stock more valuable, using this information to his own gain and trading upon it as against them; and that this was done in pursuance of an understanding between himself and Fred. Oliver, by which Fred. Oliver would reap a like advantage in dealing with the Charlotte Oil and Fertilizer Company, Fred. Oliver having procured from them, for similar purposes, options on their stock in that company. It is alleged that on account of these facts the title to the stock in question did not pass out of the petitioners, and they are still stockholders of the defendant company; that the affairs of the company are controlled by John Oliver and Fred. Oliver, who claim to be the sole stockholders, to the exclusion of the petitioners; that they have demanded of John Oliver, as president of the company and as its majority stockholder, that he give them access to the books of the company and information as

to its assets, and that the dividends to which they are entitled be paid to them, but he refuses to give them any information as to the condition of the company or to allow them a voice in its management, and proposes to distribute the assets, in a manner unknown to the petitioners, between himself and Fred. Oliver, who is a non-resident of the State; that John Oliver, acting in collusion with Fred. Oliver, has illegally and fraudulently caused a resolution to be entered on the minutes of the company, directing it to pay himself $50,000, for the alleged consideration that he had agreed to remain out of the oil business for five years; and that he is wasting the assets and mismanaging the affairs of the company in other respects stated.　　The petitioners aver their willingness to tender back and pay to John Oliver the money paid by him to them for their stock, provided he returns to the defendant company the money paid by it to him, " and to render an account of said stock." They pray for an order restraining the defendant company from paying out any money, and restraining John Oliver from disposing of the stock of the company, held or claimed by him; that the company be required to allow them access to its books of accounts, stock books, and minute book, for examination; that a receiver be appointed to take charge of the assets of the company and to wind up its affairs and distribute its assets; that John Oliver be required to return to them the shares of stock in question, and that the transfer of these shares on the books of the company be canceled; that the options be canceled; that the defendant corporation and John Oliver jointly and severally be required to account to them for the value of the stock, and that the petitioners have judgment for such sum as may be found to be due them on account of the stock and on account of any dividends declared on it; also for general relief. By an amendment they prayed that the options be reformed by inserting in them certain provisions which they alleged were understood by the parties to be a part of the contract but were omitted by mistake, to wit: that John Oliver will sell this stock at not less than $110 per share, and will account to the grantor of this option for any sum over that amount; this option being given to enable him to make a sale of the plant and property of said company.

　　The defendants demurred to the petition, on the grounds: (1) It sets out no cause of action. (2) There is no equity in it. (3) The allegations do not entitle the plaintiffs to the relief prayed for.

(4) It appears from the petition that the plaintiffs gave unconditional options, agreeing to sell the stock at a fixed price, and that John Oliver availed himself of the options and paid for the stock in accordance with the terms thereof.; and no sufficient reason in law is alleged why the contract of sale should be reformed.    (5) The allegations as to agency on the part of John Oliver to sell the stock for the benefit of the plaintiffs are at variance with the terms of the contract of sale, and can not be considered for the purpose of so varying the agreement; and the allegations on this subject do not entitle the plaintiffs to set aside the sales.    (6) The petition contains no sufficient allegations of fraud which would authorize the rescission of the sale of the stock, and no allegations sufficient to create a resulting trust.    (7) The allegations do not entitle the plaintiffs to a restraining order or a receiver.    (8) There is a misjoinder of parties defendant, in that the allegations do not render the Gate City Oil Company a proper party.    The court sustained the fourth ground of the demurrer and struck the prayer for reformation, but overruled the other grounds.    The defendants excepted.

*Anderson, Anderson & Thomas* and *J. H. Porter,* for plaintiffs in error.   *Robert C. Alston* and *F. G. DuBignon,* contra.

LAMAR, J.   Courts are created for the enforcement of civil contracts, and are powerless to relieve against hard bargains, unless authorized so to do by some rule of civil law.   From the very nature of their constitution, they must accommodate themselves to the general transactions of mankind; they can not put parties upon an equality which does not in fact exist; they can not deprive one of the advantage which superior judgment, greater skill, or wider information may give; nor can they be expected to enter upon an inquiry as to how the parties would have traded if each had known the same facts as to the state of the crops, the conditions of trade, a declaration of war, the signing of a treaty of peace, or any speculative matter or extrinsic fact of general or special knowledge. Hence, in Laidlaw *v.* Organ, 2 Wheat. 178, it was held that a purchaser of tobacco was not bound to disclose to the vendor that peace had been declared between this country and Great Britain, although that fact materially affected the value of the commodity sold; Chief Justice Marshall saying that " It would be difficult to circumscribe the contrary doctrine within proper limits, where the means of intelligence are equally accessible to both parties."    Contra, Frazer

v. Gervais, Walk. (Miss.) 72 , Bowman v. Bates, 2 Bibb, 47.    See *Abbott* v. *Dermott*, 34 *Ga.* 228 ; *Ellis* v. *Hammond*, 57 *Ga.* 179 (2). Without making the distinction between extrinsic and intrinsic facts apparently recognized by our Civil Code, § 3534, par. 4, and many American cases, Lord Thurlow said, in Fox v. Mackreth, 2 Bro. C. C. 420, that the court would not set aside a sale where the purchaser failed to divulge the fact, of which he knew the seller was ignorant, that the estate had upon it a valuable mine, unless the relation between the parties was such as to raise an obligation on the part of the vendee to make the discovery.    See also Davies v. London Ins. Co., 8 Ch. Div. 469; Turner v. Harvey, Jac. 178; 2 Pom. Eq. Jur. (2d ed.) § 903; 2 Kent's Com. 482, 490, 491 n.; Williams v. Spurr., 24 Mich. 335; Lapish v. Wells, 6 Maine, 183 ; Bowman v. Bates, 2 Bibb, 47.

And this brings us to a consideration of the relation which a director bears to an individual stockholder. All the authorities agree that he is trustee for the company, and in his capacity as such he serves the interest of the entire body of stockholders, as well as those of the individual shareholder, who usually can not sue in his own name for wrongs done the company by the officer. Civil Code, §§ 1858, 1859, 1860.    But the fact that he is trustee for all is not to be perverted into holding that he is under no obligation to each ; the fact that he must serve the company does not warrant him in becoming the active and successful opponent of an individual stockholder with reference to the latter's undivided interest in the very property committed to the director's care.    That he is primarily trustee for the corporation is not intended to make the artificial entity a fetich to be worshipped in the sacrifice of those who, in the last analysis, are the real parties at interest.    No process of reasoning and no amount of argument can destroy the fact that the director is, in a most important and legitimate sense, trustee for the stockholder. Jackson v Ludeling, 21 Wall. 616 ; 2 Pom. Eq. Jur. (2d ed.) § 1090.    Not a strict trustee, since he does not hold title to the shares ; not even a strict trustee who is practically prohibited from dealing with his cestui que trust; but a quasi trustee as to the shareholder's interest in the shares.    If the market or contract price of the stock should be different from the book value, he would be under no legal obligation to call special attention to that fact ; for the stockholder is entitled to examine

the books, and this source of information, at least theoretically, is equally accessible to both.    It might be that the director is in possession of information which his duty to the company requires him to keep secret ; and if so, he must not disclose the fact even to the shareholder ; for his obligation to the company overrides that to an individual holder of the stock.    But if the fact so known to the director can not be published, it does not follow that he may use it to his own advantage, and to the disadvantage of one whom he also represents.    The very fact that he can not disclose prevents him from dealing with one who does not know, and to whom material information can not be made known.    If, however, the fact within the knowledge of the director is of a character calculated to affect the selling price, and can, without detriment to the interest of the company, be imparted to the shareholder, the director, before he buys, is bound to make a full disclosure.    In a certain sense the information is a quasi asset of the company, and the shareholder is as much entitled to the advantage of that sort of an asset as to any other regularly entered on the list of the company's holdings.    If the officer should purposely conceal from a stockholder information as to the existence of valuable property belonging to the company, and take advantage of this concealment, the sale would necessarily be set aside.    The same result would logically follow where the fact giving value to the stock was of a character which could not formally be entered on the records.    Where the director obtains the information giving added value to the stock by virtue of his official position, he holds the information in trust for the benefit of those who placed him where this knowledge was obtained, in the well-founded expectation that the same should be used first for the company, and ultimately for those who were the real owners of the company.    The director can not deal on this information to the prejudice of the artificial being which is called the corporation, nor on any sound principle can he be permitted to act differently towards those who are not artificially, but actually interested.

There are several authorities directly on the point.    Some are at law, others in equity ; the decisions were based on a finding of a want of actual fraud, and not on demurrer, as here.    But it must be conceded that they are opposed to the conclusions we have reached.       Krumbhaar *v*. Griffiths, 25 Atl. R. 64; Haarstick *v*.

Fox, 9 Utah, 110; Crowell *v.* Jackson, 53 N. J. L. 656, adopting the ruling in Board of Comm'rs *v.* Reynolds, 44 Ind. 509, 15 Am. Rep. 245, where it was held that there was no relation of trust between a director and an individual stockholder; and that therefore the director was not bound, when purchasing the stock, to disclose to the shareholder facts, knowledge of which was acquired through his official position, although they were of a character which materially and largely affected the value of the stock. There, however, the Chief Justice dissented on the ground that a director does occupy a relation of trust, which makes him guilty of constructive fraud in acquiring the stock without disclosing facts which enhanced its value. The case has been doubted by Judge Thompson, who prefers the dissenting opinion, saying that the decision of the majority "proceeds upon a conception which, if extended, would sanction nearly all of the fraud and injustice which the managers of corporations have committed against the stockholders." 3 Thomp. Corp. 4034; Corbin's Benj. Sales § 624. And in 2 Pomeroy's Eq. Jur. (2d ed.) § 1090, it is shown that directors are not only trustees of the corporation, but also "quasi or sub modo trustees for the stockholders with respect to their shares of stock. If, then, any sort of trustees, they are necessarily subject to the obligations and restrictions which inhere in that relation, as to property entrusted to them. The shares are but the paper evidence of the interest which the stockholder has in the property under the control of the director. In their sale the stockholder disposes, not only of the lithographed or engraved scrip, but of his holdings in property. And when the director deals with a stockholder for the purchase of shares, he is not buying paper, but in effect is buying an undivided and substantial interest in property which has been committed to the director's care, custody, and control. Equity abhors mere names, and looks to the substance. Whether the corporation be treated as an enlarged and amplified form of partnership and the director as managing partner, or whether he is called an agent or trustee elected by the stockholders to represent them in the management of the concern, he occupies a fiduciary position, and is essentially within the rule which requires agents, attorneys, bailees, partners, trustees, or other fiduciaries to exercise the highest degree of good faith as to

all matters connected with the property committed to their care. 2 Pom. Eq. Jur. (2d ed.) § 963; *Stubinger* v. *Frey*, 116 *Ga.* 396.

It is matter of common knowledge that the market value of shares rises and falls, not only because of an increase or decrease in tangible property, but by reason of real or contemplated action on the part of managing officers; declaring or passing dividends; the making of fortunate or unfortunate contracts; the loss or gain of property in dispute; profitable or disadvantageous sales or leases. And to say that a director who has been placed where he himself may raise or depress the value of the stock, or in a position where he first knows of facts which may produce that result, may take advantage thereof, and buy from or sell to one whom he is directly representing, without making a full disclosure and putting the stockholder on an equality of knowledge as to these facts, would offer a premium for faithless silence, and give a reward for the suppression of truth. It would sanction concealment by one who is bound to speak, and permit him to take advantage of his own wrong — a thing abhorrent to a court of conscience. It is conceded that the position which the director occupies prevents him from making personal gains at the expense of the company or of the whole body of stockholders. But a rule that he is not trustee for the individual shareholders leads inevitably to the conclusion that while a director is bound to serve stockholders en masse, he may antagonize them one by one; that he is an officer of the company, but may be the foe of each private in the ranks. When it is admitted, as it must be, both from the very nature of his duty and from the rulings of nearly all the cases, that he is trustee for the shareholder, how is it possible in principle to draw the line and say that while trustee for some purposes, he is not for others immediately connected therewith? that the incidents of the trust relation stop short at the very point where it is vitally important to the shareholders that they should become active? For it must not be forgotten that the right to good faith in dealings concerning the stock is one of the very few which the individual shareholder is in a position to assert in his own name. Except in a few other instances, the company itself is the only proper party to enforce the obligation arising from the trust relation of the director. In contracts with reference to the shares the stockholder himself can enforce the rights arising from the quasi trust. Civil Code, §§ 1858, 1859, 1860.

While not decided, it is in one case suggested that a stockholder in dealing with a director should recognize his superior opportunities for knowledge, and be warned thereby to exercise special caution.    But the fiduciary relation fully warrants exactly the opposite course.    Here, at least, the beneficiary may be off guard, and may rely implicitly, not only on what is said, but also on the supposition that nothing important will be left unsaid by the officer. Having previously trusted the director in the management of the company, he is not required, when selling his shares, suddenly to exhibit entire want of confidence.    And directors generally recognize the obligations imposed, and act accordingly.    But the peculiar powers and special opportunities of these fiduciaries call for an enlargement rather than a restriction of the rule requiring disclosures.    Civil Code, §§ 4027, 3534.    The obligations of his office bring him peculiarly within the general doctrine which declares that concealment of material facts may of itself amount to a fraud, where from any reason one has the right to expect full information from another, or where one knows that the other is laboring under a delusion in respect to the property sold, and yet keeps silence. Civil Code, §§ 3534, 4030, 4031.    "A suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation."    Stewart v. Wyoming Ranch Co., 128 U. S. 388.    See also Fisher v. Budlong, 10 R. I. 525; Bowman v. Patrick, 36 Fed. Rep. 138 (2); Colton v. Stanford, 82 Cal. 351; Walsham v. Stainton, 1 DeGex, J. & S. 678; Porter v. Woodruff, 9 N. J. Eq. 174; Laidlaw v. Organ, 2 Wheat. 178; Kintzing v. McElrath, 5 Pa. St. 467; 2 Pom. Eq. Jur. (2d ed.) §§ 902, 903, 963, 1090.

We base our decision on the obligation raised by the relation of director and stockholder, having purposely refrained from considering the effect of the fact that the defendant is the brother of the petitioners, which, though apparent in the record, was not pressed in the briefs or arguments here.

*Judgment affirmed.    By five Justices.*