33026. WATKINS *v.* MERTZ *et al.*

Decided November 30, 1950. Rehearing denied December 15, 1950.

J. D. Godfrey, Casey Thigpen, for plaintiff.

D. E. McMaster, I. L. Evans, E. T. Averett, for defendants.

MACINTYRE, P.J.   The plaintiff seeks to recover for fraud and deceit.   It is alleged in the original petition: that the defendants, Mertz, who is the plaintiff's only brother, Copeland, Mertz's overseer, falsely and fraudulently misrepresented to her the quantity and value of the timber on the plaintiff's land in Washington County, Georgia, and thereby induced the plaintiff to sell the land, including the timber thereon, to the defendant Mertz, her brother, to her injury and damage; that the defendants well knew the value and quantity of the timber on the plaintiff's land, but the plaintiff had no experience in business and did not know the value of her lands and timber and did not know that the representations of the defendants were untrue; that she sold the timber to the defendant Mertz for $5000 whereas she has since the sale discovered its real value to be $30,000. The trial court sustained the demurrers of the defendants to the original petition on the ground that it set forth no cause of action, but granted leave to amend.   By attempting to amend to meet this ruling of the court, the plaintiff acquiesced in the ruling of the court that the original petition did not state a cause of action. *Burruss* v. *Burruss*, 196 *Ga.* 813 (2) (27 S.E. 2d, 748); *Rivers* v. *Key*, 189 *Ga.* 832 (1) (7 S. E. 2d, 732); *Massell Realty Co.* v. *Washburn*, 35 *Ga. App.* 707 (134 S. E. 798); *Howell* v. *Fulton Bag & Cotton Mills*, 188 *Ga.* 488 (4 S. E. 2d, 181).   It became the law of the case, therefore, that,

under the allegations of the original petition, the plaintiff's acceptance of the defendant Copeland's assurances as to the quantity and value of her timber was not sufficient diligence on her part. It remains only to determine then whether, by her amendment, the plaintiff added sufficient facts to show such diligence as would excuse her failure to otherwise inform herself of the true value of her property before selling to the defendant Mertz.

"It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference, on demurrer, will prevail in determining the rights of the parties." *Moore* v. *Seaboard Air-Line Ry. Co.*, 30 *Ga. App.* 466 (118 S.E. 471).

Under such a construction of the petition, as amended, it appears that the plaintiff voluntarily accepted the representations of her brother and the defendant Copeland as to the quantity and value of the timber on her lands in Washington County without investigation on her part. While it is alleged that she did not have an equal knowledge of timber values with the defendants or an equal opportunity with them to determine the quantity and value of her timber, it does not appear why this was so other than she lived in Atlanta and the defendants lived near her property and were familiar with the value of the timber since they had already, prior to the sale, ascertained for themselves, by a cruise or otherwise, the quantity and value of her timber. It is not alleged that they, or either of them, by fraud or otherwise, did anything to prevent her investigation of these matters, nor is it alleged that they, or either of them, by fraud or otherwise, did anything to prevent her having her timber cruised, scaled, and evaluated. True, it is alleged that she "exercised all reasonable diligence and exhausted all means at her command to ascertain the true values of [her] land and timber," but it is alleged that she did this "by making inquiry of . . Copeland, who she thought at that time was a fair and impartial person . . and [had] been overseer of the land for fifteen years." There is no allegation that any confidential or fiduciary relationship existed between her and Copeland or her and her brother  The fact that the plaintiff and the de-

fendant Mertz were brother and sister does not of itself create a confidential relationship such that she was entitled to rely upon his representations of the value of her property without investigation. There is no presumption of law that such relation exists between them solely from the fact of their kinship. *Crawford* v. *Crawford,* 134 *Ga.* 114 (67 S. E. 673). Nor does the fact that she reposed trust and confidence in the defendant Copeland solely on the ground that she believed him to be a fair, impartial, and truthful man create a confidential relationship. It is alleged that at the time the representations were made Copeland was Mertz's overseer and if Copeland owed a duty to anyone by virtue of a confidential relationship, he owed it to Mertz, his employer. Opposite parties have trust and confidence in each other's integrity, in the majority of business dealings, but there is no confidential relationship created by this alone. *Dover* v. *Burns,* 186 *Ga.* 19, 26 (196 S. E. 785).

No emergency or condition authorizing the plaintiff to rely upon the alleged misrepresentations without investigation is alleged and "the law does not afford relief to one who suffers by not using the ordinary means of information that may be at hand, whether his neglect be due to indifference or to credulity." *Miller* v. *Roberts,* 9 *Ga. App.* 511, 512 (71 S. E. 927); *Salter* v. *Brown,* 56 *Ga. App.* 792 (193 S. E. 903); *Arthur* v. *Brawner,* 174 *Ga.* 477 (163 S. E. 604); *Smith* v. *Shinn,* 31 *Ga. App.* 356 (120 S. E. 647); *Tindall* v. *Harkinson,* 19 *Ga.* 448; *Allen* v. *Gibson,* 53 *Ga.* 601.

The plaintiff alleges that she had no business experience, but it is not alleged that she was laboring under any mistaken belief as to the quantity and value of her timber, and that the defendants knowing this took advantage of her on that account.

The plaintiff alleges in her amendment that she relied upon the advice also of her father to sell the timber to the defendant Mertz, but it does not appear that she asked for his advice. On the contrary it appears that he came to her house in company with the defendants and "kept telling plaintiff that she should sell . . that he was offering a good price." While a confidential or fiduciary relationship may exist between parent and child, and while the one is not bound to anticipate or watch for fraud as far as the other is concerned (*Hogg* v. *Hogg,* 206 *Ga.*

691, 695, 58 S. E. 2d, 403), it should be sufficient to say that the father is not a party to this action, nor is he named as a conspirator with the defendants. Any fraud upon his part is not chargeable to the defendants in this case. Moreover, even if we assume that it was natural that the child seek the advice of the father, which she did not do, it nowhere appears from the petition that the father was for any reason better informed upon the subject of the quantity and value of the plaintiff's timber than she was herself, and the court cannot indulge in the presumption of knowledge of all things on the part of parents. That the father cast his moral support with his son rather than his daughter is not, in this case, excuse for lack of diligence on the plaintiff daughter's part.

The following cases, relied upon by counsel for the plaintiff, are distinguishable upon their facts as we shall presently indicate: *Cline* v. *Nelson*, 46 *Ga. App.* 600 (168 S. E. 70); *Elliott* v. *Marshall*, 179 *Ga.* 640 (176 S.E. 770); *Summerour* v. *Pappa*, 119 *Ga.* 1 (5) (45 S. E. 713); *Benson* v. *May*, 149 *Ga.* 555 (101 S. E. 177); *Thompson* v. *Bank of Arlington*, 44 *Ga. App.* 686 (162 S.E. 647); *Fenley* v. *Moody*, 104 *Ga.* 790 (38 S.E. 1002); *Pilcher* v. *Thompson*, 29 *Ga. App.* 493 (116 S.E. 49). In none of these cases do the pleadings show upon their faces, or by reasonable inference, that the party pleading fraud was, as a matter of law, lacking in reasonable diligence. In the *Cline* case Nelson was induced to part with title to his land upon a misrepresentation of a material fact peculiarly within the knowledge of Cline. Cline obtained the land at a lower price than he would have obtained it, had he not misrepresented the purpose for which he intended to use the land. Nelson was willing to sell at the price agreed upon only upon condition that his land was used for a dairy farm. Cline assured him that this was the use to which the land was to be put, whereas Cline sold the land to the Georgia Power Company at a considerable profit. Cline's intention existed in his mind and could not be investigated by Nelson. The diligence required by the law to prevent the perpetration of fraud upon one is not that of a detective. Only reasonable diligence is required and the trial court was held in that case to have properly overruled the general demurrer to the petition. The misrepresentation in that case did not involve

the quantity, quality or value of the property. In the *Elliott* case, Marshall sought to have a lease on his property canceled. The lease was made to Elliott upon Elliott's representation that a lease upon the property was a condition precedent to Marshall's obtaining a loan on his property. As a matter of fact the existence of the lease prevented the loan being made to Marshall. This misrepresentation was not as to a defect in the property discoverable by examination of the premises. Moreover, Marshall went to Elliott who was "an expert real estate and loan man" for advice and was not dealing upon equal terms or equal means of knowledge. The court in that case left the question of Marshall's diligence under the circumstances to the jury, as the petition did not show upon its face lack of diligence.

In the *Summerour* case, Summerour and a Mrs. McClure entered into an agreement with Pappa to exchange their lands in Texas for Pappa's lands in Georgia. The exchange was to be made upon the basis of the first cost per acre to the parties. Pappa testified that this first cost was represented to him as $4 per acre whereas it was in fact only $3.50 and that it was upon this representation that he was induced to sign the contract to exchange. Although there was evidence that the deeds from Summerour and Mrs. McClure showed the total acreage and the total first price such that mere division would have shown the first cost to be $3.50 per acre instead of $4, there was also evidence that these deeds were not delivered to Pappa until *after* he had bound himself to exchange lands under the contract and while the court said that under such evidence it could not say as a matter of law whether the plaintiff Pappa was guilty of lack of diligence in determining what the defendants paid for their land, the question before the court seems to have been whether he was guilty of laches in not discovering the fraud after the deeds were delivered to him upon the consummation of the transaction. In the *Benson* case, the plaintiff was seeking to rescind the deed in question; the vendor had misrepresented the amount of the debts outstanding against the property which amount the vendee was to assume as a part of the consideration. The amount of these debts was peculiarly within the knowledge of the vendor, and the vendee was entitled to rely upon the vendor's positive statement of this amount and to rescind for mis-

representation even if made by mistake or innocently. In the *Thompson* case, Thompson was induced by the president of the Bank of Arlington to indorse the note of a principal upon the representation of the president that the indorsement was a mere formality and was without risk to the indorser since the bank held a lien upon the principal's property affording ample security for the payment of the note. In that case the parties did not have equal means of knowledge of the existence of the lien represented. The president of the bank was chargeable with such knowledge and unless there had been circumstances warning the plaintiff of reliance upon the president's statement he was entitled to rely thereon. In the *Fenley* case, the misrepresentation was as to the existence of easements on the land affecting its value which could not be ascertained by an examination of the property. In the *Pilcher* case the misrepresentation was made by an automobile dealer of the list price designated by the manufacturer and the dealer was in a better position to know the manufacturer's price than the purchaser. The parties were not under the allegations of the petition dealing with an equal means of knowledge.

Construing the petition against the pleader on demurrer, the plaintiff failed to show a right to recover for fraud and deceit under the allegations of the petition and the law applicable thereto, and the court did not err in sustaining the defendant's demurrer or in dismissing the petition.

*Judgment affirmed. Gardner, J., concurs. Townsend, J., concurs in the judgment, but not in all that is said in the opinion.*