42796. QUINN v. FORSYTH.

Submitted May 4, 1967—Decided September 8, 1967—Rehearing denied November 3, 1967—

*Grant, Spears & Duckworth, William H. Duckworth, Jr.,* for appellant.

*Hatcher, Meyerson, Oxford & Irvin, Henry M. Hatcher, Jr.,* for appellee.

QUILLIAN, Judge. ■ Since the major issues of this case are centrally focused on Count 2, we consider it first. The count contains allegations that the stock certificates were listed in the plaintiff's name "and/or" his wife's. The appellee therefore argues that the legal effect of the instrument was that either the plaintiff or his wife, by his or her single endorsement, could

transfer the stock. Thus, he reasons, a valid sale of the stock occurred on July 10, 1960, and subsequent events would be of no consequence.

Assuming arguendo that "and/or" would authorize either the plaintiff or his wife to effectuate a valid conveyance of the stock, under the allegations of the second count this factor alone would not be controlling. In *Nash v. Martin*, 90 Ga. App. 235 (1) (82 SE2d 658), this court held: "*Code* § 13-2039, providing in substance that, when a bank deposit is made payable to either of two named persons or the survivor, such deposit may be paid to either of said persons whether the other is living or not, and the receipt of the person so paid shall be a valid and sufficient release and discharge to the bank for the payment made, has reference only to the liability of the bank as to such deposit, and *does not affect the right to the property as between the parties. Clark v. Bridges,* 163 Ga. 542, 546 (136 SE 444)." (Emphasis supplied.) In this analogous situation, even though one of the two joint owners might transfer the stock, that would by no means cut off the other's right to share in the proceeds. Moreover, a fraudulent scheme or conspiracy is alleged and under the averments the defendant was in no sense a bona fide purchaser. Instead, the defendant and the plaintiff's now former wife are alleged to be co conspirators in a scheme or plan, through fraud and deceit, whereby they acquired the plaintiff's interest in the stock at a mere fraction of its actual value. As such they are joint tortfeasors who, as in this case, may be sued severally. *Nobles v. Webb,* 197 Ga. 242, 245 (29 SE2d 158); *Peoples Loan Co. v. Allen,* 199 Ga. 537, 558 (34 SE2d 811); *Cook v. Robinson,* 216 Ga. 328 (116 SE2d 742); *Nottingham v. Wrigley,* 221 Ga. 386, 388 (144 SE2d 749). The plaintiff is seeking to pierce an alleged sham transaction and recover his rightful interest in the stock which he alleges he was wrongfully deprived of by the efforts of the defendant and the plaintiff's wife acting in concert. See in this connection *Wilson v. Appalachian Oak Flooring &c. Co.,* 220 Ga. 599, 608 (140 SE2d 830). Hence, it is apparent that, regardless of what was necessary to accomplish a stock transfer in ordinary circumstances, the gravamen of the instant suit, in essence, rests on the plaintiff's right to assert his interest

against the coholder of the stock and the one to whom she fraudulently transferred it, the defendant here. This is evident because the plaintiff, as a joint owner of the stock, was entitled to his share of the *true* proceeds of the sale.

■ Of course, what is said above naturally presupposes that there are sufficient allegations of fraud, which vital question we must now determine. Here it is alleged that, in furtherance of the conspiracy and in order to obtain the plaintiff's consent to the sale and thereby acquire his interest in the stock and the proceeds thereof, the following misrepresentations were made by the defendant: that the stock was worth no more than $1,585.50; that there was no change in the usual poor financial condition of the corporation; that prospects of improvement were not good; that, all the while, the defendant knew the corporation had reclassified its stock, gone "public" and had been successful in developing an overseas market. It was further alleged that, in order to conceal the true facts, the defendant prevented any notice being given to the plaintiff of a specially called stockholders' meeting; that the defendant refused to allow the plaintiff to see the corporate books and later represented that the corporation's condition had not changed, when in fact it had.

Appellee argues that these allegations amount to mere expressions of opinion which can not form the basis of fraud. *Dortic v. Dugas,* 55 Ga. 484 (3); *Watkins v. Mertz,* 83 Ga. App. 115 (62 SE2d 744). While acknowledging this general precept we also recognize that in Georgia the rule is that: while a corporate director does not hold title and is not a strict trustee, "he does occupy a fiduciary relation to the stockholders with reference to their shares of stock, and this relationship obtains when such director is dealing with an individual stockholder in the purchase of such stockholder's shares." *Manning v. Wills,* 193 Ga. 82, 89 (17 SE2d 261), citing *Oliver v. Oliver,* 118 Ga. 362 (4) (45 SE 232); *Swann v. Wright,* 180 Ga. 323, 326 (3) (179 SE 86). We hold that, in context, the allegations show material misrepresentations of fact, not mere opinions, and a failure to disclose pertinent and vital information which the shareholder was entitled to receive from one in a fiduciary relation to him.

A further argument is advanced that the petition fails to

affirmatively reveal that the plaintiff's action was induced by a reliance upon misrepresentations made at that particular time. While on demurrer the allegations of the petition are construed most strongly against the pleader, this does not mean the pleadings are to be given an unnatural or strained construction in violation of their reasonable and necessary intendment. *Raines v. Jones,* 96 Ga. App. 412 (100 SE2d 157); *New Cigar Co. v. The Broken Spur,* 103 Ga. App. 395 (119 SE2d 133); *Georgia Power Co. v. Leonard,* 187 Ga. 608, 614 (4) (1 SE2d 579). Viewed as a whole there is no reasonable inference but that the plaintiff was misled by past, by re-affirmance of past and by present misrepresentations. In this connection we note the following allegation: "On November 13, 1961, he sold to the defendant his one-half interest in said stock for $1,584.50, in reliance on said past representations and in reliance upon the defendant's further representation that the condition of the corporation had not changed since the petitioner and the defendant had last talked." This is subject to no other construction than that the misrepresentation took place on the date the plaintiff executed the written assignment of stock.

■ The defendant contends that under the Uniform Stock Transfer Act, Ga. L. 1939, p. 384 (now repealed but then in effect), the plaintiff's failure to repudiate the sale during the period from July 10, 1960, to November 13, 1961, amounted to a ratification of the sale. The Act reads: "If the endorsement or delivery of a certificate, (a) was procured by fraud or duress, or . . . (c) without authority from the owner, . . . the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless: . . . (2) The injured person has elected to waive the injury or has been guilty of laches in endeavoring to enforce his rights." Ga. L. 1939, pp. 384, 387, § 7.

The defendant further argues that the plaintiff must exercise diligence (see *Brinsfield v. Robbins,* 183 Ga. 258, 272 (188 SE 7), *U. S. Fidelity &c. Co. v. Toombs County,* 187 Ga. 544, 555 (1 SE2d 411)) and the failure to inspect the corporate records which he had a right to do (*Winter v. Southern Securities Co.,* 155 Ga. 590 (1) (118 SE 214)), would preclude him from now recovering. *Manning v. Wills,* 193 Ga. 82, 89, supra; *Comolli v. Coggins,* 200 Ga. 620, 624 (37 SE2d 793).

As is apparent from the language of the Georgia cases a stockholder may not blindly rely on a director's representations. However, here it was alleged that the plaintiff did make a reasonable effort to ascertain the facts by repeatedly seeking to see the records and being refused in each instance, and there is, of course, no requirement of exhaustive investigation. Whether this constituted due care to ascertain the true facts would be a jury question. *Norris v. Hart,* 74 Ga. App. 444, 446 (40 SE2d 96); *Dorsey v. Green,* 202 Ga. 655, 659 (44 SE2d 377).

If, under the provisions of the Uniform Stock Transfer Act, an automatic ratification of the sale might occur as a result of the plaintiff's inaction or laches; yet, after the passage of the described time, the plaintiff, of course, did ratify the sale but only while laboring under the effect of the defendant's fraudulent misrepresentations. Any earlier ratification by operation of the Uniform Stock Transfer Act still resulted from those same misrepresentations. The plaintiff would not be precluded from asserting his rights by acquiescing in a sale, which acquiescence was induced by fraud.

Count 2 was not subject to general demurrer.

■ The defendant's demurrer raises the question whether the plaintiff was barred by the statute of limitation. *Code* § 3-807 provides: "If the defendant, or those under whom he claims, shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud." The petition alleges that the plaintiff was prevented by the defendant from ascertaining the truth until December 23, 1964; but, in any case, at best the plaintiff could not have discovered the true situation until after November 13, 1961, and the suit was brought October 28, 1965, within 4 years of that time as required by law. *Code* § 3-1002; *Frost v. Arnaud,* 144 Ga. 26 (85 SE 1028). There is no merit in this ground of demurrer.

■ Most of what is here held relative to Count 2 is applicable to Count 1. However, one further ruling applicable only to Count 1 is here made.

Count 1 alleges that the stock was owned jointly by the plain-

tiff and his wife and contains nothing to indicate the shares could be transferred by either, individually. Under the provisions of the Uniform Stock Transfer Act, in order to transfer title to the stock the plaintiff as joint owner, must have (1) endorsed the stock certificate, (2) executed a written assignment of the stock or (3) a power of attorney to sell, assign or transfer the stock. Ga. L. 1939, pp. 384, 385, 391, §§ 1 and 22. Under the averments of Count 1 the defendant would have been without clear title to the plaintiff's interest in the stock until the assignment of November 13, 1961. Without question, the purpose of the scheme alleged in Count 1 was to obtain title from the plaintiff and the misrepresentations, the allegations of which we have already found to be sufficient, were calculated to achieve that aim. For this additional and distinct reason, Count 1 was not subject to general demurrer.

The trial judge erred in sustaining the general demurrers to Counts 1 and 2 of the petition.

*Judgment reversed. Jordan, P. J., and Deen, J., concur.*