A95A1307. AVERILL v. AKIN et al.
(463 SE2d 730)

RUFFIN, Judge.

In 1977, John Averill, Herbert Saliba and John Akin opened a fruit packing business called Herbert Saliba Packing House, Inc. (the "packing house"). Averill was an officer, director and 25 percent owner of the packing house. Saliba, now deceased, was also an officer and director, and owned 50 percent of the packing house. Akin owned the remaining 25 percent and he too was an officer and director. In addition to owning the packing house, both Saliba and Akin grew peaches which were packed by the business. From 1979 to 1983, Averill was paid substantial dividends from his ownership of the packing house. Following the cessation of dividend payments in 1986 and Saliba's death in 1988, Averill sued Akin and W. W. Kidd, the executor of Saliba's estate on October 10, 1990. In his complaint, Averill alleged that from 1983 to 1986, Akin and Saliba misappropriated packing house funds through a rebate program, thereby depriving him of dividend payments. Akin and Kidd moved for summary judgment, contending in part that Averill's complaint was barred by the statute of limitation. The trial court granted the motion and Averill appealed. We affirm.

Viewed in a light most favorable to Averill as the respondent, the record shows that growers would deliver fruit to the packing house where the peaches were packed, sold and delivered to buyers. After being paid for the peaches, the packing house would deduct expenses for packing, brokerage commissions, trucking, and inspection, then pay the balance to the grower. Beginning in 1983, in an effort to attract more business, the packing house offered rebates to growers based on the volume of peaches delivered for packing. Both Saliba and Akin sent the peaches they grew to the packing house and, like other growers, received rebates based on the volume of peaches deliv-

ered for packing.

Although the packing house's general ledger contained a column reflecting the rebates, financial statements prepared by its accountant did not show the rebates as a separate line item. Rather, the financial statement included the rebates under a packing charge account. Averill testified at his deposition that the only time he requested to see the corporate books prior to Saliba's death was in 1979 and that the bookkeeper provided them to him. He further testified that the first time he looked at the general ledger after Saliba died, he had no difficulty ascertaining the existence of the rebates and was able to compute the total rebates paid without any assistance. He stated that the ledger contained a detailed recitation of the dates the rebates were paid, the check numbers and the person to whom the checks were written, and that January 6, 1986 was the last date a rebate was paid. Finally, the record shows that in both 1986 and 1988, Averill requested inspection reports from the State to determine the quantity of peaches inspected by the packing house because he suspected that someone might be "cooking the books" and he was not sure he would get the correct answer from Saliba.

1. Averill asserts the trial court erred in holding that his action was barred by the statute of limitation. He contends that the limitation period was tolled under OCGA § 9-3-96 because he was fraudulently debarred and deterred from filing the action. He argues that because Saliba and Akin were corporate officers, they were obligated to inform him of the rebate program and that their silence constituted a fraud which tolled the statute until he discovered the alleged misdeeds in 1989.

OCGA § 9-3-96 provides that "[i]f the defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Generally where the defendant accused of fraud is a corporate officer occupying a fiduciary relationship with the shareholder, the "mere silence" of that officer is sufficient to toll the statute. *Shipman v. Horizon Corp.*, 245 Ga. 808, 809 (267 SE2d 244) (1980). However, a shareholder is not "entitled to negligently refuse to acquire knowledge that was open and available to him . . ." through inspection of the corporation's books and records. *Comolli v. Coggins*, 200 Ga. 620, 624 (37 SE2d 793) (1946). "Where the opportunities for knowledge are equal, the stockholder takes the consequences of failing to inform himself. [Cit.]" *Manning v. Wills*, 193 Ga. 82, 89 (2) (17 SE2d 261) (1941). In short, a shareholder cannot turn a blind eye on information available to him. See *Quinn v. Forsyth*, 116 Ga. App. 611 (3) (158 SE2d 686) (1967).

In this case, the record shows that the general ledger, which was available to Averill and provided to him upon request, clearly and in

detail showed rebates were being paid to growers until January 6, 1986. Given that Averill had an equal opportunity to inform himself of the rebates, he must suffer the consequences of failing to acquire that knowledge.

The trial court ruled, and it is not disputed that the statute of limitation for Averill's claims against the defendants is four years. Because Averill did not file his complaint until October 10, 1990, the trial court did not err in granting the summary judgment to the defendants.

2. Because we concluded in Division 1 that summary judgment was proper, it is unnecessary to address Averill's other assertion that the trial court erred in ruling that this suit should have been filed as a derivative action.

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED NOVEMBER 7, 1995.

*Roy W. Griffis, Jr., O. Hale Almand, Jr.,* for appellant.
*Jones, Cork & Miller, Hubert C. Lovein, Jr., John D. Raines III, Davis, Gregory, Christy & Forehand, Gary C. Christy,* for appellees.