Charles H. CHILDS, Jr. and Earl P. Paris

v.

RIC GROUP, INC.

Civ. A. No. 11743.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 25, 1970.

John W. Chambers, Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., for plaintiff.

Hugh M. Dorsey, Jr., Gary W. Hatch, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT [*]

SIDNEY O. SMITH, Jr., Chief Judge.

Securities Funding Corporation (SFC) was incorporated in January, 1967. The corporation was capitalized with 3,000 shares of stock issued to six individuals and another corporation. Five of the individuals (including plaintiffs herein) received five hundred shares each; the sixths and the corporation received two hundred fifty shares each. The board of directors was comprised of the six individual stockholders (Childs Deposition Ex. 1). Paris and Childs had extensive background in the business for which SFC was organized. (Childs Deposition, pp. 3, 4; Paris Deposition, p. 4). It was intended that they furnish the "operating know-how" and actually manage SFC, with the other stockholders remaining passive investors. (Childs' Deposition p. 19). Paris was elected President and Treasurer, while Childs became Vice President and Secretary. (Childs Deposition pp. 18, 19).

In July, 1967, a "business broker" told John F. Beaird, Chairman of the Board of RIC Group, Inc., about the advent of SFC in its particular area of the insurance industry. Since Beaird was interested in that area, the broker arranged for him to meet Paris and Childs, who Beaird was informed were officers, directors and stockholders of SFC. (Beaird Affidavit June 3, 1969, ¶ 2 (C.A. 12202)).

After that meeting, in a letter dated July 26, 1967, Beaird proposed to acquire 80% of SFC's outstanding stock in exchange for a certain number of shares of RIC common stock, and contingent upon the continuation of the

---

[*] The defendant RIC GROUP, INC. in C.A. 11743 has renewed its motion for summary judgment in that action. Earlier, that motion was denied without prejudice to RIC's right to renew it at a later date. RIC insists that the motion' is good, and should be granted before trial, in the interest of narrowing the issues. The earlier denial of RIC's motion in C.A. 11743 was not "on the merits", and was not intended to reflect that the court had come to any conclusion regarding the central issues presented.

A ruling on the merits of RIC's motion in C.A. 11743 would necessitate deciding (1) whether, while negotiating the purchase of SFC stock from Pilcher, et al (the other SFC directors and stockholders), Paris and Childs owed Pilcher, et al a common-law or statutory duty to disclose that RIC and Beaird had offered to purchase 80% of SFC's issued and outstanding common stock; and (2) whether Paris and Childs breached any such duty found to exist.

The reason for denying RIC's motion for summary judgment in C.A. 11743 was that these two questions are also central issues in C.A. 12202. It was felt that the principal parties to the challenged transaction—Pilcher, et al on the one hand, and Paris and Childs on the other, the principal protagonists in C.A. 12202 —ought to be parties to any decision establishing the nature of their legal relations to each other. Accordingly, RIC's motion in C.A. 11743 was denied, pending resolution in C.A. 12202 of the issues as to Paris' and Childs' duty (if any) to the other stockholders, and the alleged breach thereof.

On reconsideration, there appears no reason for so delaying a decision on the merits of RIC's motion in C.A. 11743, especially since the issues described above do appear susceptible to resolution by summary judgment.

"present" management of SFC. (Childs' Deposition, Ex. 2). After Paris and Childs initially rejected Beaird's offer, Childs proposed that they form a new company similar to SFC. However, this idea was dropped because such an undertaking might violate the duties Paris and Childs owed other SFC stockholders under their shareholders' agreement. (Childs Deposition, pp. 43-45, and Ex. 3).

Late in the summer of 1967, Paris and Childs telephoned W. H. Dunaway, and possibly other directors of SFC, and set up a conference at which Paris and Childs demanded that their wives be placed on SFC's board of directors. (Pilcher Affidavit, May 9, 1969, ¶ 4; Dunaway Affidavit, May 9, 1969, ¶ 4 (C.A. 12202)).

In September, Paris and Childs again met with Beaird and other RIC representatives. (Childs' Deposition, pp. 45, 46). Beaird essentially repeated the July offer, and Paris and Childs countered with a proposal involving more RIC stock, and a loan to buy out the other SFC stockholders. (Childs' Deposition, pp. 50-54). In a letter dated September 26, 1967, Beaird stated the terms proposed by Paris and Childs in the form of an offer. (Childs' Deposition, Ex. 5).

Thereafter, in early October, 1967, Pilcher and Paris met with the other SFC directors, and again demanded that their wives be placed on the SFC board of directors. (Affidavit of T. N. Mozely, May 8, 1969, ¶ 4; Affidavit of W. H. Dunaway, May 9, 1969, ¶ 5 (C.A. 12202)). When the other directors refused, a buy-sell arrangement was proposed, whereby either group of shareholders would buy the other out. (Childs' Deposition, pp. 57, 58). It was finally decided that Paris and Childs would buy out the other directors and stockholders at $25 per share, $5 per share over the amount originally paid in. (Childs' Deposition, p. 18). On November 2, 1967, the transaction was closed, and the sale consummated. (Childs' Deposition, pp. 97-98).

It is undisputed that at no time did Paris and Childs ever disclose to the other SFC stockholders that the RIC negotiations were taking place. (Childs' Deposition, pp. 59, 96-99; Paris Deposition, pp. 14, 21, 22).

Further negotiations between Paris and Childs and RIC soon followed. However, in March of 1968, the negotiations broke down at a meeting in Tampa, Florida, and the exchange involving RIC stock for the SFC shares never occurred. RIC and Beaird claim they declined to consummate the transaction because Paris and Childs refused to confirm that they had disclosed RIC's offers to the other SFC shareholders. Paris and Childs argue that RIC knew all along no disclosure had been made, that they even proposed alternatives designed to protect RIC from any suits by the other former SFC shareholders, and that RIC's refusal to perform was and is unjustifiable. (Harris Deposition, pp. 24-31).

The common-law obligations of officers and directors of a corporation to its shareholders and to the corporation itself are set by the law of the state of its incorporation. *See* Rogers v. Guaranty Trust Co., 288 U.S. 123, 130, 53 S.Ct. 295, 77 L.Ed. 652 (1933). In Georgia, a director occupies a fiduciary relationship to stockholders, and when the former is dealing with the latter for the purchase of shares in the corporation, he must disclose all material facts relating to the value of the stock learned by virtue of superior access to such information conferred by his office. This principle was enunciated in Oliver v. Oliver, 118 Ga. 362, 45 S.E. 232 (1903), which was an action by at least two brothers against a third. The defendant was the president of a corporation in which all the brothers held equal portions of stock. The plaintiffs were New York residents, and had left management of the corporation to the defendant, in Georgia. The Georgia Supreme Court held that based on the obligation raised by the fiduciary relationship of director to stockholder, before

the defendant exercised his options to buy out the interests of his brothers, he should have informed them that he had entered negotiations which eventually resulted in the sale of the corporation's assets to a third party.

"In a certain sense the information is a quasi asset of the company, and the shareholder is as much entitled to the advantage of that sort of an asset as *to any other regularly entered on the list of the company's holding.* * * * Where the director obtains the information * * * *by virtue of his official position,* he holds the information in trust for the benefit of those who placed him where this knowledge was obtained. * * *" (Emphasis added) 118 Ga. at 368, 45 S.E. at 234.

This rule enjoys continuing validity. *See* Quinn v. Forsyth, 116 Ga.App. 611, 617, 158 S.E.2d 686 (1967).

█ A similar obligation exists under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), as implemented under the SEC's Rule X–10B–5, 17 C.F.R. § 240.10–5. The statute states that it shall be unlawful for any person—by using (a) any means or instrumentality of interstate commerce,[1] or (b) the mails, or (c) any facility of a national securities exchange —to use any manipulative or deceptive device or contrivance which violates SEC rules in connection with the purchase or sale of any security. The Commission's Rule specifies further that under such circumstances, it is unlawful to (1) use any device, scheme or artifice to defraud, (2) make an untrue statement of a material fact, or fail to state a material fact necessary to make any statements made not misleading, or (3) engage in any fraudulent act, practice or course of business.

In Speed v. Transamerica Corp., 99 F.Supp. 808 (D.Del.1951), aff'd 235 F. 2d 369 (3rd Cir. 1956), the majority shareholder of a tobacco company bought up the stock of certain minority shareholders without informing them of the true value of the company's tobacco inventory, which allegedly exceeded the cost shown in the most recent annual report by nearly $10,000,000. (The annual report showed the average cost of the inventory to be $7,516,970). The majority shareholder purchased the two classes of shares for $40 and $10 per share, respectively. The complaint alleged that the real value of the shares at the time of the sale was over $200 and $100 per share, respectively. Judge Leahy stated:

"The rule is clear. It is unlawful for an insider, such as a majority stockholder, to purchase the stock of minority stockholders without disclosing material facts affecting the value of the stock *known to the majority stockholder by virtue of his inside position* but not known to the selling minority stockholders, which information would have affected the judgment of the sellers. The duty of disclosure stems from the necessity of preventing a corporate insider from utilizing his position to take unfair advantage of the uninformed minority stockholders." (Emphasis added). 99 F.Supp. at 828–829.

Although it may be contested whether plaintiffs in C.A. 11743 were "majority shareholders" for purposes of the federal law, Kardon v. National Gypsum Co., 73 F.Supp. 798 (E.D.Pa.1947) involves facts nearly identical to the instant case. In *Kardon,* the stock in a paper and paper products manufacturing company was owned in four equal portions by two brothers (the Slavins) and a father and son (the Kardons). All four were directors, but Eugene Kardon and the two Slavins were actively engaged in operating the company, while the elder Kardon lived in another state entirely. The Slavins bought out the Kardons without

---

1. It is sufficient for jurisdictional purposes that an instrument of interstate commerce such as a telephone is used, even if its actual use by the defendant in a 10b–5 action was only intrastate. Myzel v. Fields, 386 F.2d 718, 727 (8th Cir. 1967).

disclosing that Leon Slavin had, in his capacity as a company officer, agreed to sell the company's plant and equipment to National Gypsum. The court held that under any reasonable interpretation, the provisions of Section 10(b) and Rule 10B–5 "apply to directors and officers who, in purchasing the stock of the corporation from others, fail to disclose a fact coming to their knowledge *by reason of their position*, which would materially affect the judgment of the other party ·to ·the ·transaction." (Emphasis added). 73 F.Supp. at 800.

■ It is thus clear that where knowledge of facts affecting the value or price of stock comes to an officer or director of a corporation by virtue of his office or position, he is under a duty to disclose such facts to other stockholders before dealing in company stock with them, even if they too are directors or company officers, and regardless of whether these facts pertain to intracompany matters, such as the value of assets, or relate to events "outside" the corporation, such as a proposed merger or acquisition.

■ In the instant cases, the Court is convinced that if Paris and Childs were approached by Beaird because they were directors or managing officers of SFC, then Paris and Childs owed the other shareholders the duty of disclosing the fact of any negotiations directed toward, or offers of the acquisition of SFC by RIC. This conclusion is reached despite the fact that Paris and Childs owned only 1,000 shares of SFC, while the other shareholders collectively owned 2,000 shares; and despite the fact that the other shareholders were also directors.

The Court is equally convinced that Paris' and Childs' failure to disclose the fact of either negotiations or offers of acquisition constitutes a breach of that duty. The only significant argument to the contrary advanced by Paris and Childs is that the other shareholders waived any such disclosure, by failing to insist on a once-requested representation from Paris and Childs that no negotia-

tions for the sale of SFC stock were being conducted by Paris and Childs with third parties. The facts regarding the original demand for, and the subsequent failure to insist on such representation are not in dispute. Paris and Childs admit that at no time before the consummation of the purchase from the other directors did they disclose that negotiations with RIC and Beaird were in progress, or that acquisition offers had been made. They do not dispute the affidavits of Pilcher and Mozely to the effect that they had no knowledge of the negotiations or offers until June, 1968, more than six months after the sale was consummated. Pilcher Affidavit, May 9, 1969, ¶ 7; Mozley Affidavit May 8, 1969, ¶ 8 (C.A. 12202).

■ Waiver of rights under the Securities Exchange Act of 1934 should be limited to cases where it is intentional. Therefore, to support a finding of waiver, it must be found that the particular statutory right was actually known. A party does not waive these rights without acting in full knowledge thereof. Royal Air Properties, Inc. v. Smith, 333 F.2d 568 (9th Cir. 1964). There it was held that since plaintiff did not know the undisclosed facts prior to or on the date he purchased the stock in question, he was not aware of his rights under the Securities Exchange Act of 1934 at the time he performed the acts claimed to constitute waiver, 333 F.2d at 572.

■ The same is true in the instant case. Since the plaintiffs in C.A. 12202 did not learn of the negotiations with and offers from RIC until well after they had sold their stock to Paris and Childs, going through with the sale without insisting on the representation initially requested does not constitute an intentional waiver of rights under the Securities Exchange Act of 1934. Although no cases on the point have been located, the same conclusion is reached regarding waiver of rights protected under the principles of Oliver v. Oliver, 118 Ga. 362, 45 S.E. 232 (1903).

It thus is clear that plaintiffs' acquisition of SFC stock from the other SFC shareholders without disclosing that negotiations for re-sale over to RIC and Beaird were in progress, breached plaintiffs' duty to the other shareholders under Georgia law, and violated federal securities law. Insofar as plaintiffs agreement with RIC and Beaird induced or tended to induce that breach and violate that law, it is unenforceable.

The contract which plaintiffs argue existed between them and defendants, is said to consist of the exchange of SFC stock and plaintiffs' promise to continue as SFC management for RIC stock and a loan for plaintiffs to buy out the other SFC shareholders. Complaint, ¶ 8–10; Childs Deposition Ex. 5. Thus, the agreement between plaintiffs and defendants, including both the exchange of stock and the provision for the loan, is one which induced or tended to induce a breach of fiduciary duty under Georgia law, and which aided in the perpetration of fraud on a third party under federal securities law. This conclusion follows whether the defendants knew all along that plaintiffs were acquiring the stock of the other SFC shareholders, or only learned of plaintiffs' failure to disclose at the March, 1968, meeting in Tampa, Florida: the basic nature of the contract is the same under either alternative.

 It is well settled that where a corporate officer or director aids third parties in acquiring a controlling interest in his corporation, he cannot successfully maintain a suit to recover the consideration for his efforts. Horbach v. Coyle, 2 F.2d 702 (8th Cir. 1924); Carlisle v. Smith, 234 F. 759 (N.D.Ga. 1916); *cf.* Westwood v. Continental Can Co., Inc., 80 F.2d 494 (5th Cir. 1935); *see also* Restatement of Contracts § 569 (1932). A bargain for such assistance is illegal; it is unenforceable and against public policy because enforcement of such contracts is likely to induce breaches of the fiduciary duty which the officers and directors owe their corporation and the other shareholders. *Ibid.*

It follows logically that neither will courts lend their aid to requiring the third party to carry out any other aspect of its part of the bargain which has a similar effect.

In the instant case, therefore, plaintiffs may not obtain judicial relief for defendants' failure to fully perform the bargain they allegedly struck. Accordingly, defendants motion for summary judgment is granted.

It is so ordered.