No. 48,166

Sherman H. Sampson, LaFaye Sampson, Weston Sampson and Karen Sampson Ward, *Appellees*, v. Jack R. Hunt and Bonanza, Inc., a Kansas Corporation, *Appellant*.

(564 P.2d 489)

Opinion filed May 14, 1977.

*David J. Wood*, of Dresie, Jorgensen and Wood, of Wichita, argued the cause, and *Grey Dresie*, of the same firm, was with him on the brief for the appellant.

*Eugene G. Coombs*, of Coombs, Lambdin, Kluge and Kennedy, of Wichita, argued the cause, and *Donald E. Lambdin* and *Douglas J. Moshier*, of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

Prager, J.: This is an action brought by stockholders against the president-managing officer of a corporation to rescind a sale of corporate stock or in the alternative to recover damages. The plaintiffs-appellees are Sherman H. Sampson, LaFaye Sampson, his wife, and their two children, Weston Sampson and Karen Sampson Ward. They collectively owned 50% of the stock in Bonanza, Inc. The defendant-appellant is Jack R. Hunt, president of Bonanza, Inc., and the owner of the remaining 50% of the corporate stock. The theory of the action is that Hunt, in violation of a fiduciary obligation to the other stockholders, induced them to sign an agreement to sell their stock to him for substantially less than its true value by withholding from them important information affecting the financial status of the corporation and the value of the stock. The trial was hotly contested. Hunt denied

withholding material information from the Sampsons and, on the contrary, testified that a full disclosure had been made.

The essential facts as found by the trial court are as follows: Bonanza, Inc. was originally organized in 1965 by Sherman H. Sampson, Jack R. Hunt, and Howard Scott. Howard Scott's shares were later purchased by the corporation, which left ten shares of outstanding stock, five shares of which were owned by Sherman R. Sampson, and five shares of which were owned by Jack R. Hunt. In 1968 Sherman H. Sampson placed one share of stock each in the name of his wife and two children, retaining the right to vote for all stock held by the Sampson family. Thereafter Hunt served as president and Sampson served as secretary of the corporation. Both were directors of the corporation. The primary activity of Bonanza, Inc., was the development of the Sweetbriar Shopping Center in Wichita. The center was developed in three phases. The first phase involved the forming of the corporation and the initial construction of the center. Howard Scott was responsible for the leasing of space; Hunt was responsible for the construction; and Sampson was responsible for the financing of the corporation. Scott discontinued all activity in the venture when he sold his stock back to the corporation. Financing for phase one was obtained by a loan from the Prudential Savings Bank of New York. The amount of this loan was $810,000. Bank documents listed Bonanza, Inc., Hunt and Sampson as "owner-builder." At this stage the bank documents also indicated the owners had successfully obtained numerous lease commitments.

The second phase of development involved obtaining additional financing and the construction of space in the center for a large discount department store. For this construction an additional loan in the amount of $500,000 was obtained from Prudential Savings Bank. Both Hunt's and Sampson's names were contained on the loan request.

The third phase of the development began in early 1970. It was during this phase that the dispute in the instant case arose. The third phase involved the obtaining of additional financing and the negotiation of additional leases. Application for the additional financing was formally made to Prudential Savings Bank on June 25, 1970. Unlike previous dealings with the bank, this application was made solely by Hunt. Sampson testified that he had no knowledge this application had been made, was pending,

or had been approved by the Prudential Savings Bank. In addition Hunt on behalf of the corporation negotiated for new leases and the expansion of old leases. Sampson testified that he was not informed by Hunt and had no knowledge of these new leases. Sampson testified categorically that he was specifically told by Hunt that no new leases could be obtained. At about this same time Hunt on his own agreed to sell a 7½% interest in the corporation to three doctors. This sale was contingent upon Hunt's buying Sampson's stock. Such sale of stock served to add some $45,000 additional capital to the corporation. Hunt did not disclose the sale of this stock to Sampson.

On July 5, 1970, Hunt delivered a letter to Sampson in which Hunt offered to sell his five shares of stock in Bonanza, Inc. to Sampson or in the alternative to purchase the stock of the Sampson family for the amount of $75,000. On September 8, 1970, an agreement was executed whereby Sampson and his family sold their stock in Bonanza to Hunt for $75,000 plus the payment of certain debts owed Sampson by the corporation. It was after the payment of the purchase price that Sampson first learned of the additional leases obtained by Hunt, the additional financing obtained from Prudential Savings Bank, and the sale of corporate stock to the three doctors mentioned above. This action by the Sampsons against Hunt was then filed.

The case was tried to the court sitting without a jury in 1974. After a full hearing on the merits the district court entered judgment in favor of the Sampsons in the amount of $93,000 based upon the difference between the actual value of the stock sold and the amount received in the sale with interest from the sale date. The court made extensive findings of fact and conclusions of law. The court found that Hunt alone was the moving force behind the activities of the third phase of the development; that Hunt had an intimate and working knowledge of the affairs of Bonanza; that he worked in the capacity of manager, promoter, and leasing agent; and that he prepared the buy or sell agreement. The court also found that although Sampson was secretary and a director of the corporation and was custodian of the corporation records, he had in fact withdrawn from the active management of Bonanza, Inc. and was essentially in the position of an investor. The court further found that Hunt had a superior knowledge of the affairs of Bonanza and that Hunt withheld from Sampson

material information as to the new loan commitment by Prudential Savings Bank and as to the successful negotiation of new leases for space in the shopping center. The court concluded that Sampson had relied upon Hunt and made no independent investigation of the true financial position of Bonanza, Inc.

As his first point on this appeal Hunt maintains that the court's findings of fact are not supported by the evidence contained in the record. The monumental record in this case contains ample evidence to support the trial court's findings. The trial court had before it two conflicting versions of the events leading up to the sale. It chose to believe Sampson's testimony that Hunt withheld from Sampson material information affecting the value of the corporate stock and found that as a result Hunt was able to purchase Sampson's stock for approximately one-half its actual value. Hunt also questions the court's finding as to the actual value of the stock of the corporation. The court determined the value of the stock by the use of estimates taken from Hunt's own financial statements in which Hunt listed the value of his 50% interest to be worth $150,000. He purchased Sampson's 50% interest for $75,000. The trial court's award of damages in the amount of $75,000 plus interest was thus supported by the record.

Hunt's other point on this appeal raises a question of law involving the duty of a director or managing officer of a corporation to disclose to another stockholder material information as to the status of the corporation's affairs prior to a sale and purchase of corporate stock. It is the established rule in this state that a director of a corporation owes a high fiduciary duty to the other stockholders of the corporation. The Kansas rule is exemplified by *Stewart v. Harris*, 69 Kan. 498, 77 Pac. 277 (1904), where we held:

"The managing officers of a corporation are not only trustees of the corporate entity and the corporate property, but they are to some extent, and in many respects, trustees for the corporate shareholders.

"When two parties occupy to each other a confidential or fiduciary relation, and a sale is made by one to the other, equity raises a presumption against the validity of the transaction. To sustain it the buyer must show affirmatively that the transaction was conducted in good faith, without pressure or influence on his part, and with express knowledge of the circumstances and entire freedom of action on the part of the seller.

"A director or managing officer of a corporation having knowledge of the condition of its affairs, because of the trust relation and the superior opportunities afforded for acquiring information must inform a stockholder not actively en-

gaged in the management of the true condition of the corporation before he can rightfully purchase his stock." (Syl. 1, 2, 3.)

This position has recently been reaffirmed by this court and by the United States Court of Appeals for the 10th Circuit interpreting Kansas law. (*Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 531 P. 2d 428; *Delano v. Kitch,* 542 F. 2d 550 [10th Cir. 1976].) (For a commentary on the Kansas cases see Nazar, *Corporations: A Strict Fiduciary Standard for Officers and Directors,* 16 Washburn L. J. 755 [Spring 1977].)

The defendant Hunt on this appeal concedes that such a fiduciary relationship exists where a director or managing officer of a corporation seeks to purchase the corporate shares of a stockholder not actively engaged in the management of a corporation. He maintains, however, that such a fiduciary relationship does not exist where the stockholder who sold his shares is another director or officer of the corporation as is true in the present case where the plaintiff Sherman Sampson was both a director and secretary of Bonanza, Inc. Although the majority of the earlier cases held to the contrary, the more recent cases hold that in a closely held corporation where one director or officer has a superior knowledge of corporate affairs because he is intimately involved in the daily operations of the corporation while the other director or officer has only a limited role in corporate management, the fiduciary duty is the same as if the latter were a stockholder not actively engaged in corporate affairs. (*Helms v. Duckworth,* 249 F. 2d 482 [D.C. Cir. 1957]; *Childs v. RIC Group, Inc.,* 331 F. Supp. 1078 [N.D. Ga. 1970]; *Kardon v. National Gypsum Co.,* 73 F. Supp. 798 [E.D. Pa. 1947].)

We hold that the rule of law to be followed in Kansas is that where knowledge of facts affecting the value or price of stock comes to an officer or director of a corporation by virtue of his office or position, he is under a fiduciary duty to disclose such facts to other stockholders before dealing in company stock with them, even if they too are directors or officers, and regardless of whether these facts pertain to intracompany matters, such as the value of assets, or relate to events "outside" the corporation, such as the existence of favorable contracts, the availability of additional financing, or any other matters which would tend to increase the value of the corporation's stock. Applying this rule to the facts and circumstances of the present case we must conclude

that the defendant Hunt, as president and director of Bonanza, Inc., breached his fiduciary duty to the plaintiff Sampson, a director and secretary of the corporation, by Hunt's failure to disclose material information affecting the value of the stock of Bonanza, Inc. before contracting to purchase Sampson's shares.

The judgment of the district court is affirmed.