LEONARD GELLER *vs.* ALLIED-LYONS PLC & others.[1]

No. 94-P-1290.

Norfolk. December 15, 1995. - January 29, 1997.

Present: PORADA, GREENBERG, & FLANNERY, JJ.

*Public Policy. Corporation,* Officers and agents. *Fiduciary. Frauds, Statute of.*

Where a fiduciary in an acquired corporation entered into a self-dealing finder's fee agreement with the acquiring corporation, the agreement was unenforceable on public policy grounds. [122-125]

A corporate fiduciary did not demonstrate, on the record of summary judgment proceedings, that he had made a full, fair and contemporaneous disclosure to the corporation of the material facts regarding his self-dealing finder's fee contract with another who sought to acquire the corporation, as would be a prerequisite to the enforcement of the contract. [125-128]

CIVIL ACTION commenced in the Superior Court Department on June 17, 1992.

The case was heard by *Thomas E. Connolly*, J., on motions for summary judgment.

*Robert M. Bonin* for the plaintiff.

*John D. Donovan, Jr.*, for the defendants.

FLANNERY, J. Leonard Geller, a former senior vice president of Dunkin Donuts Incorporated (Dunkin), appeals from summary judgment entered in the defendants' favor in his action to recover a finder's fee which Allied-Lyons PLC (Allied), through a subsidiary, allegedly promised the plaintiff in the event that Allied acquired Dunkin. The Superior Court judge determined that the oral finder's fee agreement was unenforceable for reasons of public policy and the Statute of Frauds, G. L. c. 259, § 7. We affirm on the ground of public policy.

---

[1] Dunkin Donuts Incorporated and David H. Lipka.

The summary judgment record reveals the following facts, which we view in the plaintiff's favor. In 1985, the plaintiff, as Dunkin's senior vice-president for international development, was contacted by David H. Lipka, the president and chief executive officer of DCA Food Industries, Inc. (DCA), a Dunkin supplier and a subsidiary of Allied. In the course of their conversation, Lipka asked Geller whether Dunkin would be interested in being acquired by Allied and also stated that Allied would pay Geller a one percent finder's fee if he would help Allied to acquire Dunkin. Geller communicated Lipka's inquiry to Robert Rosenberg, Dunkin's chief executive officer and chairman of Dunkin's board of directors, who bristled at the mention of acquisition and rejected the overture. When Geller informed Lipka of Rosenberg's response, Lipka reiterated Allied's interest and the promised finder's fee. In the course of their subsequent dealings with one another, Lipka periodically reaffirmed the fee agreement with Geller.[2]

In April, 1989, Dunkin learned that an entity called Kingsbridge had acquired a significant percentage of Dunkin stock and was attempting a takeover. This was not viewed favorably by Dunkin management, which then hired Goldman Sachs to find other buyers. Upon request, Geller provided Goldman Sachs with the names of Allied and another company as possible purchasers. In September, 1989, Rosenberg met with Dunkin's senior executives, including Geller, and announced that none of the potential purchasers contacted by Goldman Sachs was interested. At some point during this meeting, Geller expressed his surprise that Allied was not interested, adding that Allied had previously contacted him about an acquisition and had offered him a one percent finder's fee.

---

[2]In his deposition testimony, Geller stated that the finder's fee agreement required him to represent Allied in helping it to acquire Dunkin and to do whatever he could on Allied's behalf to effect the acquisition; he also testified that he did not know whether he would be representing Dunkin or Allied in the acquisition process. We, therefore, disregard those portions of Geller's subsequent affidavit, filed in opposition to the defendants' motion for summary judgment, wherein he asserted that the finder's fee agreement required only that he keep Allied informed in the event Dunkin became interested in being acquired (a fact he argues shows the contract would not have caused him to breach any fiduciary duty). The plaintiff cannot create a disputed issue of fact by submitting an affidavit that contradicts his earlier sworn testimony. See O'Brien v. Analog Devices, Inc., 34 Mass. App. Ct. 905, 906 (1993); American Employers' Ins. Co. v. Horton, 35 Mass. App. Ct. 921, 923 n.2 (1993).

Geller claims that those present, including Rosenberg; Dunkin's president, Thomas Schwartz; and Dunkin's general counsel, Lawrence Hantman, "could have heard" or "would have been exposed to" Geller's statement about the one percent finder's fee. Geller then requested Rosenberg's permission to contact Lipka personally regarding the acquisition; Rosenberg, at first reluctant, acquiesced, and Geller flew to New York to meet with Lipka. Following this and other meetings between Allied representatives and Dunkin management, Allied's interest in acquiring Dunkin was renewed.

Allied eventually purchased Dunkin in November, 1989, and Rosenberg gave Geller a $20,000 bonus for his efforts. Geller told Rosenberg, however, that he expected to receive a finder's fee from Allied. Rosenberg responded that that was between Geller and Allied. Neither Allied nor Dunkin paid Geller the anticipated fee which, at one percent of the purchase price, amounted to $3.23 million, and the plaintiff brought this action to recover on the contract.

On appeal, the plaintiff challenges the two grounds upon which summary judgment was entered. We address the plaintiff's arguments in turn.

1. *Public policy considerations.* Under Massachusetts law,[3] officers and directors owe a fiduciary duty to protect the interests of the corporation they serve. *Cecconi* v. *Cecco, Inc.*, 739 F. Supp. 41, 45 (D. Mass. 1990). Senior executives are considered to be corporate fiduciaries and to owe their company a duty of loyalty. *Chelsea Indus.* v. *Gaffney*, 389 Mass. 1, 11-12 (1983).[4] Corporate fiduciaries are required to be loyal to the corporation and to refrain from promoting their own interests in a manner injurious to the corporation. *Seder* v. *Gibbs*, 333 Mass. 445, 453 (1956). *Johnson* v. *Witkowski*, 30 Mass. App. Ct. 697, 705 (1991). *Orsi* v. *Sunshine Art Studios, Inc.*, 874 F. Supp. 471, 475 (D. Mass. 1995). See *Pepper* v. *Litton*, 308 U.S. 295, 311 (1939). The prohibition

[3]The parties have raised no issue as to choice of law and in their briefs rely primarily on Massachusetts law. We therefore do likewise.

[4]In their respective briefs, the parties disagree as to whether the plaintiff was an officer of Dunkin. However, it is undisputed that the plaintiff held the position of senior vice-president for international marketing during the period from 1984 until his retirement in 1990, and the plaintiff concedes that, as a senior executive, he owed Dunkin a fiduciary duty of loyalty. In light of his senior standing in the corporation, we treat the plaintiff as a corporate fiduciary. See *Chelsea Indus.* v. *Gaffney*, 389 Mass. at 11-12.

against self-dealing on the part of corporate fiduciaries requires that the corporation receive the full benefit of transactions in which an officer engages on the corporation's behalf, without thought to personal gain; this is part of the bargain upon which investors rely when they purchase a corporation's stock. See *Enstar Group, Inc.* v. *Grassgreen*, 812 F. Supp. 1562, 1570-1571 (M.D. Ala. 1993). For that reason, a contract for personal gain which could cause a corporate fiduciary to breach his or her fiduciary duty of loyalty to the corporation is generally held to be unenforceable as against public policy. See *Colonial Operating Co.* v. *Poorvu*, 306 Mass. 104, 107-108 (1940); *Odman* v. *Oleson*, 319 Mass. 24, 26 (1946); *Dynan* v. *Fritz*, 400 Mass. 230, 242-243 (1987); *Childs* v. *RIC Group, Inc.*, 331 F. Supp. 1078, 1084 (N.D. Ga. 1970). See also Restatement (Second) of Contracts § 193 (1981) ("A promise by a fiduciary to violate his fiduciary duty or a promise that tends to induce such a violation is unenforceable on grounds of public policy"). Accordingly, Massachusetts courts vigorously scrutinize self-interested transactions involving corporate fiduciaries. *Boston Children's Heart Foundation, Inc.* v. *Nadal-Ginard*, 73 F.3d 429, 433 (1st Cir. 1996). See, e.g., *Johnson* v. *Witkowski*, 30 Mass. App. Ct. at 709-710.

As a senior vice president of Dunkin, Geller was prohibited from using his strategic position within the corporation to enter into an agreement for personal gain that could compromise his duty of loyalty to Dunkin and its shareholders. See *Chelsea Indus.* v. *Gaffney*, 389 Mass. at 11-12 (an executive employee is bound to act solely for his employer's benefit in all matters within the scope of his employment); *Cumberland Farms, Inc.*, v. *Haseotes*, 181 B.R. 678, 680 (Bankr. D. Mass. 1995). See also *Pepper* v. *Litton*, 308 U.S. at 311. By pledging his assistance to Allied in return for a multimillion dollar finder's fee, the plaintiff placed himself in a position in which his contractual obligation to Allied and his own pecuniary interests could have prevented him from acting in Dunkin's best interest. See, e.g., *Jerlyn Yacht Sales, Inc.* v. *Wayne R. Roman Yacht Brokerage, Inc.*, 950 F.2d 60, 66-67 (1st Cir. 1991) (broker withheld information from his principal in order to earn larger commission); *Burton* v. *Pet, Inc.*, 509 S.W.2d 95, 100 (Mo. 1974) (agent employed by Pet, Inc., who entered into a contract to receive a fee from a prospective purchaser was thereby in a position to wrong his employer by failing to pursue other prospects).

Geller counters that his finder's fee agreement with Allied did not cause financial harm to Dunkin and therefore did not cause a breach of his duty of loyalty. The fact that Allied's acquisition of Dunkin may have ultimately benefited Dunkin shareholders does not eliminate the danger that was inherent in the finder's fee agreement. See *Chelsea Indus.* v. *Gaffney,* 389 Mass. at 13 (an executive who breaches his fiduciary duty to his employer may forfeit the right to compensation even absent a showing of actual injury to the employer); *Burton* v. *Pet, Inc.,* 509 S.W.2d at 100, citing *Atlee* v. *Fink,* 75 Mo. 100, 103 (1881) (it is immaterial that no injury occurred from a commission contract between the plaintiff's employee and the defendant supplier, where the contract could have tempted the employee to increase his own personal profit at his employer's expense). The plaintiff's impropriety, as we see it, was in accepting an opportunity for personal gain when the paramount interests of the corporation called for protection; this is particularly true in the sensitive area of acquisition. See *Durfee* v. *Durfee & Canning, Inc.,* 323 Mass. 187, 196-199 (1948)[5] ; *Orsi* v. *Sunshine Art Studios, Inc.,* 874 F. Supp. at 476. In creating a temptation for the plaintiff to favor Allied, the finder's fee agreement could have induced the plaintiff to facilitate an acquisition that was not in Dunkin's best interest, had the events of 1989 unfolded differently.[6] See *Childs* v. *RIC Group, Inc.,* 331 F. Supp. at 1084; *Cumberland Farms, Inc.* v. *Haseotes,* 181 B.R. at 680 (a director violated his fiduciary duty by purchasing creditors' claims against his corporation, placing himself in a potential conflict of interest); *Burton* v. *Pet, Inc.,* 509 S.W.2d at 100 (in prohibiting an agent from contracting to serve an opposing party in acquiring his principal's business, the law recognizes that "human

[5] The rule forbidding a corporate fiduciary from reaping private profit through his position with the corporation "does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, but upon a broader foundation of wise public policy that, for the purpose of removing all temptation, extinguishes all possibility of profit flowing from a breach of the confidence imposed by the fiduciary relation." *Durfee* v. *Durfee & Canning, Inc.,* 323 Mass. at 198. The same language appears in *Mills Acquisition Co.* v. *Macmillan, Inc.,* 559 A.2d at 1280, quoting from *Guth* v. *Loth, Inc.,* 5 A.2d 503, 510 (Del. 1939).

[6] Despite the plaintiff's protestations on appeal that he played no role in the Allied-Dunkin negotiations, his deposition testimony reveals that he was instrumental in revitalizing Allied's interest in the acquisition and in bringing the two parties together.

nature is too weak to assure faithful service" in such circumstances and will not permit enforcement).

2. *Full disclosure of self-dealing.* Despite the foregoing, the plaintiff maintains that the finder's fee agreement did not violate his duty of loyalty because he disclosed it in the presence of Rosenberg and others prior to the acquisition and they failed to object.[7] Because of this disclosure, the plaintiff argues, the finder's fee agreement should be enforced. See, e.g., *George H. Gilbert Mfg. Co.* v. *Goldfine*, 317 Mass. 681, 685 (1945) (director's self-interested contract may be valid if, with full knowledge of all the facts, it is assented to by all officers and stockholders); *Wartski* v. *Bedford*, 926 F.2d 11, 19 (1st Cir. 1991) (a corporate officer's self-dealing "could rise above his fiduciary duty only if accompanied by a good faith disclosure"); *Cinerama, Inc.* v. *Technicolor, Inc.*, 663 A.2d 1156, 1173-1174 (Del. 1995) (finder's fee to director, paid by the purchaser's investment banker, was disclosed and approved by a majority of the disinterested directors). Viewing the undisputed facts and reasonable inferences in the plaintiff's favor, we conclude that the plaintiff has not satisfied his summary judgment burden in this regard.[8] At best, the plaintiff asserts that he made a statement regarding Al-

---

[7]In addition to informing Rosenberg, the plaintiff claims to have told various other senior Dunkin executives about the finder's fee agreement, including Hantman, Dunkin's general counsel, and Sidney Feldenstein, apparently a vice president. As the cases cited in our discussion, *supra*, make clear, full disclosure must be made to a disinterested decision-maker, typically the board of directors or the shareholders. The plaintiff points out that the Dunkin code of ethics required disclosure of potential conflicts of interest to the general counsel, the controller, and the director of financial reporting. Lacking complete information in the record as to which Dunkin officers served in those posts, we will presume that, at minimum, full disclosure to Rosenberg, as chief executive officer and chairman of the board of Dunkin directors, was required of the plaintiff.

[8]Contrary to the plaintiff's assertion in his brief, when a self-interested contract is challenged, the burden is on the fiduciary to prove its fairness. *Buckman* v. *Elm Hill Realty Co. of Peabody*, 312 Mass. 10, 15 (1942). *Winchell* v. *Plywood Corp.*, 324 Mass. 171, 177 (1949). *Johnson* v. *Witkowski*, 30 Mass. App. Ct. at 706. In the summary judgment context, when the nonmoving party has the burden of proof at trial, Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), requires that that party, in order to defeat the motion, must go beyond general allegations in the complaint and designate by affidavits or by depositions, answers to interrogatories, or admissions on file specific facts showing that there is a genuine issue for trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 713-714 (1991).

lied's previous promise of a one percent finder's fee at a meeting which Rosenberg, Hantman, and other senior Dunkin executives attended, that Rosenberg could have heard him or would have been exposed to the statement, and that Rosenberg made no response.

As matter of law, sotto voce indications do not fulfil a fiduciary's duty of full disclosure of self-dealing. The plaintiff's actions here to inform Dunkin of the finder's fee agreement did not rise to the level of full and fair disclosure that has long been required before a fiduciary may procure personal profit in the conduct of corporate affairs. In the oft-cited case of *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. at 203, the Supreme Judicial Court cautioned that "[n]o half-hearted disclosure or partial discovery" would satisfy the corporate fiduciary's obligation to make full disclosure; rather, the corporation "must be apprised of all the material facts and as well of their legal effect." See *Production Mach. Co.* v. *Howe*, 327 Mass. 372, 375, 377-378 (1951); *Beacon Wool Corp.* v. *Johnson*, 331 Mass. 274, 282 (1954) (under Delaware law, corporate directors have no right to receive compensation for services rendered outside their corporate duties unless approved by the proper disinterested corporate officers); *Dynan* v. *Fritz*, 400 Mass. at 242-243 (good faith requires full and honest disclosure of all relevant circumstances of a stock repurchase agreement between corporation and officer to permit a disinterested decision maker to exercise informed judgment); *Cain* v. *Cain*, 3 Mass. App. Ct. 467, 476 (1975) (corporate fiduciary who owned fifty percent of the shares in a close corporation was required to obtain the consent of the other shareholder before appropriating a corporate opportunity for himself); *Energy Resources Corp.* v. *Porter*, 14 Mass. App. Ct. 296, 301-302 (1982) (corporate fiduciary must unambiguously disclose that a corporate opportunity is unavailable because of refusal to deal, and the reasons therefor, before he may avail himself of the opportunity); *Johnson* v. *Witkowski*, 30 Mass. App. Ct. at 710 (directors improperly committed the corporation to a guaranty to protect their interests without informing the remaining director or obtaining his consent); *Cooke* v. *Lynn Sand & Stone Co.*, 37 Mass. App. Ct. 490, 497 (1994) (a corporate fiduciary seeking to profit from a contract with the corporation is required to make full contemporaneous disclosure of all of contract's

terms to the director-shareholders); *Boston Children's Heart Foundation, Inc.* v. *Nadal-Ginard,* 73 F.3d at 434 (good faith requires a corporate officer to disclose fully and honestly any material information relevant to a self-interested transaction so that a disinterested decision maker may exercise informed judgment); *Cumberland Farms, Inc.* v. *Haseotes,* 181 B.R. at 680 (director's suggestion some months earlier that the corporation might want to purchase the claims of certain creditors against the corporation did not obviate the director's duty to bring specific purchase proposals to the corporation's attention). See generally Restatement (Second) of Agency § 391 (1958) ("Unless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency without the principal's knowledge").

The plaintiff's disclosure here was at best half-hearted. There is no evidence, nor could it be reasonably inferred, that Geller informed Rosenberg that the one percent finder's fee agreement previously offered to Geller was still in effect, that Geller had agreed to its terms, or that he was required by the agreement to do whatever he could on Allied's behalf to effect the acquisition. It also appears from the plaintiff's deposition testimony, as well as from the context in which the plaintiff's disclosure took place, that he alluded to the earlier promise of a finder's fee as an indication of Allied's previous interest in acquiring Dunkin and as a sign that Allied's interest might be rekindled. There is nothing in the record to suggest that the plaintiff raised the subject of the finder's fee in such a manner as to apprise Dunkin that he wished to take advantage of Allied's offer and that he was seeking Dunkin's consent. Nor is there any indication that Rosenberg even heard the disclosure; we are unwilling, therefore, to allow the inference that Rosenberg's lack of response constituted acquiescence.[9]

Accordingly, we believe that evidence of the kind of direct

[9]Given the plaintiff's tentative account of his disclosure, coupled with his description of the somewhat chaotic mood of the meeting, there would have to be evidence of some overt act of acknowledgement on Rosenberg's part before one could infer that the disclosure was actually heard, much less consented to. See, e.g., *Astarte, Inc.* v. *Pacific Indus. Sys.,* 865 F. Supp. 693, 705 (D. Colo. 1994) (full disclosure and ratification or approval, or showing that transaction was fair to the corporation, were required for a director to perform in multiple roles in a corporate transaction).

and informed communication that would be necessary to satisfy a fiduciary's obligation of full, fair, and contemporaneous disclosure is lacking here. In keeping with the Supreme Judicial Court's admonition in *Durfee* v. *Durfee & Canning Co.*, 323 Mass. at 198-199, we conclude, as matter of law, that the plaintiff's actions did not constitute full disclosure of all material facts respecting the finder's fee agreement, a prerequisite for enforcement.

3. *The Statute of Frauds.* The Superior Court judge also held that the oral finder's fee agreement was unenforceable under the Statute of Frauds, G. L. c. 259, § 7. It is undisputed that there is no writing and that one would be required if the agreement was entered into after March of 1985. It is the plaintiff's contention, however, that no writing was required because the agreement was first reached in January or February of 1985. And, even if the contract could not be enforced unless and until it had been fully disclosed to Dunkin, that requirement is not an element of contract — that is, disclosure may be required for enforceability, but a contract may be entered into without a disclosure requirement as a material term. Thus, an oral contract entered into before the effective date of the Statute of Frauds would be enforceable upon later full disclosure. In light of our affirmance of the Superior Court judge's holding that the claimed agreement is unenforceable on account of public policy, we need not and do not decide the Statute of Frauds issue.[10]

*Judgments affirmed.*

---

[10]Our determination that the finder's fee agreement is unenforceable for reasons of public policy also disposes of the plaintiff's remaining claims for misrepresentation and for G. L. c. 93A violations. Because the plaintiff was not entitled to profit personally from his actions on Allied's behalf, he suffered no injury to a legally protected interest under either of these claims.